UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 14-11636 |
| QUNSTON T COLEMAN AND<br>YOLANDA A. COLEMAN | CHAPTER 13 |
| DEBTORS | SECTION "B" |

*********************************************************************

QUNSTON T. COLEMAN AND
YOLANDA A. COLEMAN

| | |
|---|---|
| VERSUS | ADV. P. NO. 14-1046 |

BARCLAYS CAPITAL, PLC, et al.

**MEMORANDUM OPINION**

This matter arose out the foreclosure of the mortgage on the debtors' home by the Bank of New York ("BONY"). The adversary proceeding came on for trial on October 26, 2015 on the first amended complaint (P-31) of the debtors, Qunston and Yolanda Coleman (the "debtors") against defendants Barclays Capital Real Estate Inc. d/b/a Homeq Servicing, Deutche Bank National Trust Company as Trustee, Mortgage Electronic Registration System a.k.a. MERS, The Bank of New York Mellon National Association as Grantor Trustee of Protium Master Grantor Trust ("BONY"), Equifirst Corporation, Homeq Servicing, and Statebridge Company LLC ("Statebridge") (the "defendants"). The first amended complaint alleged the following causes of action: Breach of Contract, Violation of the Automatic Stay, Demand for Turnover, Negligent Misrepresentation, Fraudulent or Intentional Misrepresentation, Breach of Good Faith and

Fair Dealing, Violations of RESPA, and Misappropriation of Funds and Accounting Issues. The defendants appealed this court's denial of their motion to dismiss, and the district court dismissed the claim that BONY lacked standing to file the foreclosure action against the debtors; the claim that the state court foreclosure action was a nullity; and the claim for violations of RESPA. At the close of trial, this court ruled for the bank and dismissed the claim for violation of the automatic stay. As to the remaining counts, the court finds that the defendants owe the debtors $2,065.08, the amount the debtors were overcharged for force placed hazard insurance. All remaining causes of action are dismissed.

## I. **Background Facts**

The debtors purchased a house in Marrero, Louisiana and executed a note and mortgage on November 5, 2007.[1] They apparently made the regularly scheduled payments without incident until February 1, 2012, when the debtors failed to make the scheduled monthly payment.[2] On September 13, 2012, BONY filed a petition to foreclose on the property in state court, and an order was entered to allow the seizure and sale of the property in accordance with Louisiana law.[3] A sheriff's sale was scheduled for April 24, 2013, but was postponed by BONY. The parties exchanged various letters and

---

[1] Trial Exhibits 1 and 2.

[2] Defendants' post-trial brief at p. 3; trial exhibit 6.

[3] BONY acquired the mortgage and note for the debtors' property at some point after the debtors purchased the house. Statebridge began to service the loan on July 22, 2010.

phone calls trying to reach a settlement. The debtors were told by the defendants to fill out an application for loan modification, which they did, and after a substantial amount of time that application was denied.[4] The sheriff's sale was rescheduled for June 18, 2014 at which time BONY purchased the property. On June 25, 2014, the debtors filed their petition for relief under the Bankruptcy Code and subsequently filed this adversary proceeding.

## II. Legal Analysis

The debtors' amended complaint still raises several causes of action. First, the debtors allege that there was a breach of contract in that Statebridge, the loan servicer and an agent of BONY, "force placed" hazard insurance on the property from March 29, 2010 to March 29, 2012 even though the debtors had hazard insurance of their own during this time period. Statebridge then charged the debtors for this extra insurance. The defendants' response is that Statebridge did not purchase hazard insurance from March 29, 2010 to March 29, 2011, and as to the period between March 29, 2011 and March 29, 2012, the debtors did not inform Statebridge that they had their own insurance, so the purchase of the extra hazard insurance was proper. Neither party contests that hazard insurance was required by the terms of the mortgage.

---

[4] Dean Morris, LLP, the foreclosing attorneys for BONY, sent a number of papers concerning modification of the loan to Michael Allday, the attorney for the debtors, on April 26, 2013. Trial Exhibit 10. The date on which, and for that matter the party to whom, the detbor submitted the application and supporting papers requesting a modification of the mortgage loan is not not clear. The date of the written refusal to modify, October 28, 2013, is, however, clear. Trial Exhibit 24.

The documents entered into evidence show that the debtors had hazard insurance in place from March 29, 2010 to March 29, 2012.[5] Additionally, Mr. Coleman testified that each time he received one of the letters from Statebridge notifying him that they did not have evidence of his insurance, he called his insurance agent and instructed him to forward the policy information to Statebridge; he further testified that he did this quite frequently because Statebridge charged him every month for force placed insurance. He further testified that his insurance agent confirmed that he had sent the information repeatedly. Although not entered into evidence, counsel for both parties had a discussion during the trial from which it appeared that the evidence of insurance had been sent to BONY, the mortgagee, rather than Statebridge, the mortgage servicer.

The court finds that the evidence presented at trial, which includes the testimony of Mr. Coleman and exhibits 19 and 25, show that the debtors did indeed have hazard insurance in place from March 29, 2011 to March 29, 2012, and that Statebrindge erroneously charged the debtors for the hazard insurance during that time period. It appears that Mr. Coleman notified Statebridge and/or BONY of this fact both over the phone personally, and in writing through his insurance agent. Thus Statebridge overcharged the debtors in the amount of $2,065.08.

The debtors also allege that they have a breach of contract claim in connection with what they designate as a settlement agreement to resolve the foreclosure action. The

---

[5] Trial Exhibits 19 and 25.

defendants respond to this by arguing that there was only an agreement to postpone the April 23, 2013 sales date, which they did do, but no agreement to settle the foreclosure and because no agreement was reached before the foreclosure finally took place, there was no contract, and thus there can be no breach of contract.

When the debtors first learned that foreclosure was imminent, they hired an attorney, Michael Allday, to represent them. Several of the letters between Mr. Allday and the attorney for the defendants, Benjamin Dean were entered into evidence. Additionally, both attorneys testified at trial. From the letters and the testimony, the court finds that although Mr. Allday was successful in having the initial foreclosure sale, which was scheduled for April 23, 2013, postponed so that the debtors could attempt to work out a loan modification, no final agreement in writing was ever reached between the parties resulting in a second contract between them. Although the debtors argue that the agreement by the defendants to postpone the foreclosure sale and allow the debtors to apply for a loan modification *was* the second agreement, the debtors acknowledge that the loan modification application was eventually denied.[6] The court finds that calling the agreement reached by the attorneys - to halt temporarily the foreclosure sale and allow the debtors to pursue a loan modification - a contract or settlement of the lawsuit and/or an agreement to modify the loan is too great a stretch. The so-called second claim for breach of contract fails because there was no contract or agreement between the parties that was

[6] As noted in footnote 4, the final notice that the loan modification request was denied was dated October 28, 2013 some 6 months after the initial foreclosure sale date.

breached.

The remaining claims of the debtors for negligent and intentional misrepresentations, and detrimental reliance, are barred by a Louisiana statute. The Louisiana Credit Agreement Act codified at LSA R.S. § 6:1121 *et seq.* operates as a "statute of frauds" for the credit industry and bars exactly the type of recovery the debtors here are seeking. It's purpose "is to prevent potential borrowers from bringing claims against lenders based on oral agreements."[7] Where there is a situation such as the one before the court where the debtors and a bank are discussing a loan modification agreement, a forbearance, or any other type of oral credit agreement, there is no cause of action unless the agreement "is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."[8] The Louisiana Supreme Court has held that the statute bars all types of recovery, including those for breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty.[9] Several decisions from the U.S. District Court for the Eastern District of Louisiana have also held that the statute bars exactly the type of

---

[7] *Jesco Constr. Corp. V. Nationsbank Corp.,* 830 So.2d 989, 992 (La. 2002).

[8] *Hutchinson v. JPMorgan Chase Bank, N.A.,* 2013 WL 6502848 at *2 (EDLA 2013).

[9] *Jesco* at 992.

recovery the debtors are seeking.[10] Accordingly, the remaining claims of the debtors are dismissed.

## III. Conclusion

For the foregoing reasons, the court finds that the defendants erroneously charged the debtors for force placed hazard insurance in the amount of $2,065.08, and that amount shall be payable to the debtors. All remaining counts are dismissed. A separate order shall be entered in accordance with this memorandum opinion.

New Orleans, Louisiana, April 14, 2016.

J. A. Brown
Jerry A. Brown
U.S. Bankruptcy Judge

---

[10] *Hutchinson v. JPMorgan Chase Bank, N.A.*, 2013 WL 6502848 (EDLA 2013); *Loraso v. JPMorgan Chase Bank, N.A.*, 2013 WL 5755638 (EDLA 2013); *Bass v. Chase Home Finance, LLC*, 2010 WL 3922709 (EDLA 2010).